## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| 225 BOWERY LLC[1], | Case No. 23-100094 (TMH) |
| Reorganized Debtor. | |
| PLAN ADMINISTRATOR, for and on behalf of REORGANIZED DEBTOR 225 BOWERY LLC, | Adv. Pro. No. 25-50018 (TMH) |
| Plaintiff, | |
| v. | |
| 225 BOWERY MEZZ LENDER LLC, NORTHWIND RE, LLP, NORTHWIND RE GP LLC, and RAN ELIASAF. | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Before this Court is 225 Bowery Mezz Lender LLC, Northwind RE, LLP

("Northwind RE"), Northwind RE GP LLC ("Northwind GP"), and Ran Eliasaf's (the

"Defendants'") motion to dismiss (the "Motion to Dismiss")[2] the Plan

Administrator's complaint (the "Complaint").[3] The Plan Administrator filed his

---

[1] The Reorganized Debtor in this chapter 11 case, along with the last four digits of the Debtor's federal tax identification number is 225 Bowery LLC (1333). The location of the Debtor's service address is: 187 Chrystie Street, New York, NY, 10002.

[2] Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint to Avoid and Recover Fraudulent Conveyance (the "Motion to Dismiss") [D.I. 9]. All docket references in this opinion are to the docket in the adversary proceeding, unless otherwise stated.

[3] Complaint to Avoid and Recover Fraudulent Conveyance, Plan Administrator v. 225 Bowery Mezz Lender LLC, Case No. 25-50018 (TMH) (the "Complaint") [D.I. 1].

Complaint for and on behalf of 225 Bowery LLC (the "Reorganized Debtor") to recover funds that the Debtor allegedly fraudulently transferred to the Defendants in March 2019.

A court will only grant a motion to dismiss if the complaint fails to establish a prima facie claim for relief on its face, considering all the allegations in the complaint as true and in the light most favorable to the plaintiff. Because the Plan Administrator met this standard, the Motion to Dismiss is denied.

## I.    Background

The Reorganized Debtor, 225 Bowery LLC, owns and operates a hotel in New York City (the "Hotel").[4] It commenced a chapter 11 bankruptcy proceeding (the "Chapter 11 Case") in this Court on January 24, 2023 (the "Petition Date"). This Court confirmed its plan of reorganization (the "Plan") on June 28, 2024.[5] Shortly thereafter, on January 23, 2025, the Plan Administrator filed the Complaint against the Defendants—225 Bowery Mezz Lender LLC (the "Mezz Lender"), Northwind RE (the owner of the Mezz Lender), Northwind GP (the general partner of Northwind RE), and Ran Eliasaf (who, the Plan Administrator alleges, controlled Northwind RE and Northwind GP in all relevant respects).[6] The following facts are set forth as alleged in the Complaint, unless otherwise stated.

---

[4] Complaint at 1.
[5] Findings of Fact, Conclusions of Law and Order Approving and Confirming the Second Modified Third Amended Chapter 11 Plan of 225 Bowery LLC Pursuant to Chapter 11 of the Bankruptcy Code, Case No. 23-10094 (TMH) (the "Plan") [D.I. 641-1]; see also id. Ex. A (the "Plan") [D.I. 641-2].
[6] Compl. at 1-2, 4.

A. Facts

On February 14, 2017, the prior owners of the Hotel (the "Prior Hotel Owners")[7] entered into three loan agreements with the Bank of the Ozarks (the "Bank of the Ozarks Loans").[8] Pursuant to those loan agreements, the Bank of the Ozarks agreed to advance an aggregate principal amount of $45 million, with the Hotel and certain other assets as collateral.[9]

Also on February 14, 2017, VNAA Mezz, KAL Mezz, and TLLULE Mezz (the "Mezz Borrowers") entered into a loan agreement with the Mezz Lender (the "Mezz Loan").[10] Pursuant to that agreement, the Mezz Lender loaned the Prior Hotel Owners $15 million with an interest rate of twelve percent per annum.[11] Notably, the Mezz Loan was structurally junior to the Bank of the Ozarks Loans and to all other claims against the Prior Hotel Owners.[12] The Mezz Loan was secured only by the Mezz Borrowers' membership interests in the Prior Hotel Owners.[13]

The Prior Hotel Owners later underwent a restructuring so that each Mezz company merged with its respective Bowery company: KAL Mezz merged with KAL Bowery to form KAL, TLLULE Mezz merged with TLLULE Bowery to form TLLULE, and VNAA Mezz merged with VNAA Bowery to form VNAA.[14] The

---

[7] The Prior Hotel Owners were VNAA Bowery, KAL Bowery, and TLLULE Bowery. Complaint at 6. They owned the Hotel as tenants-in-common. Id. The Prior Hotel Owners formed 225 Bowery LLC as part of a restructuring in about 2019. Id. at 8.
[8] Compl. at 6.
[9] Id.
[10] Id.
[11] Id. at 7.
[12] Id.
[13] Id.
[14] Id. at 8.

resulting three companies then formed a new entity, 225 Bowery Group LLP

("Bowery Group"), in which they each had an ownership interest.[15] Bowery Group

then formed 225 Bowery LLC, the Reorganized Debtor, which Bowery Group wholly

owned.[16]

This restructuring was for the purpose of securing a loan from the Bank of

Hapoalim B.M. ("BHI"), which required transferring the Hotel to a newly formed

special purpose entity.[17] Under the terms of that loan (the "BHI Loan"), BHI loaned

$68 million to 225 Bowery LLC.[18] BHI and 225 Bowery LLC closed on the BHI Loan

on March 4, 2019.[19] The proceeds of the BHI Loan were to be applied as follows: a)

to pay BHI fees of $418,000, b) to fund certain reserves by BHI in the amount of

$6.2 million, c) to satisfy the Bank of the Ozarks Loan in the amount of

$45,289,069.87, and d) to pay certain fees and expenses of approximately $1.1

million incurred in connection with the closing of the BHI Loan.[20]

After those disbursements, there was a total remaining amount of

$14,940,410.96.[21] That amount was diverted to pay off the Mezz Loan even though

it was structurally junior to other creditors whose debt had not been paid.[22] The

Plan Administrator contends that the Debtor was not obligated to repay the Mezz

Lender because its loan was subordinated to third-party creditors; instead, the

---

[15] Id.
[16] Id.
[17] Id.
[18] Id.
[19] Id.
[20] Id. at 8-9.
[21] Id. at 9.
[22] Id.

excess $15 million should have been used to pay claims held by third-party creditors and to adequately capitalize the Debtor with sufficient funds to complete construction on its hotel and begin operations.[23]

Based on the Debtor's transfer of the excess proceeds of the BHI Loan to the Mezz Lender, the Plan Administrator alleges five counts: 1) Avoidance of Fraudulent Conveyance or Transfer under 11 U.S.C. § 544 and "Applicable State Law" against the Mezz Lender, 2) Recovery of Fraudulent Conveyance or Transfer under 11 U.S.C. § 550 against the Mezz Lender, 3) Recovery of Fraudulent Conveyance or Transfer under 11 U.S.C. § 550 against Northwind RE, 4) Recovery of Fraudulent Conveyance or Transfer under 11 U.S.C. § 550 against Northwind GP, and 5) Recovery of Fraudulent Conveyance or Transfer under 11 U.S.C. § 550 against Ran Eliasaf.[24]

Regarding the first count, the Plan Administrator alleges that the Debtor:

(a) was insolvent on the date that the transfer was made or became insolvent as result of the transfer . . . , (b) engaged or was about to engage in a business or transaction for which its remaining assets were unreasonably small in relation to the business or transaction . . . , and (c) intended to incur or believed it would incur debts that would be beyond its ability to repay as such debts became due.[25]

The Plan Administrator also contends that the Debtor did not receive anything in exchange for the conveyance to the Mezz Lender.[26] Therefore, the Plan Administrator asserts that the conveyance of funds violated state fraudulent

---

[23] Id. at 9, 13.
[24] Id. at 13-17.
[25] Id. at 14.
[26] Id.

transfer law, as applicable through 11 U.S.C. § 544, because the conveyance left the Debtor without sufficient capital to satisfy its obligations to creditors or fund operations, and it eventually led to the bankruptcy.[27]

Regarding the second, third, fourth, and fifth counts, the Plan Administrator asserts claims against each of the defendants individually under 11 U.S.C. § 550.[28] That section allows the trustee to recover property transferred from the initial transferee, the entity for whose benefit such transfer was made, or any immediate or mediate transferees of the initial transferee.[29] The Plan Administrator contends that the Mezz Lender was the initial transferee, and Northwind RE, Northwind GP, and Ran Eliasaf were immediate or mediate transferees.[30] Thus, the Plan Administrator seeks to recover the amount of the conveyance from the defendants.[31]

## B. Arguments Regarding the Motion to Dismiss

The Defendants brought this Motion to Dismiss for failure to state a claim.[32] They argue that the Complaint did not sufficiently meet the pleading standards.[33] Regarding the first count, they argue that the Complaint failed to specify the state law applicable to the count and it failed to allege sufficient facts to meet the prima facie elements of the count.[34] The Defendants explained that assuming New York

---

[27] Id. at 13-15.
[28] Id. at 15-17.
[29] Id. at 15.
[30] Id. at 13-17.
[31] Id. at 12, 13-17.
[32] Motion to Dismiss at 1.
[33] Id.
[34] Id. at 10.

law would apply (because the harm occurred in New York), the Complaint should have alleged sufficient facts to show that:

> (i) the transfer in question occurred within the applicable time period; (ii) the debtor at the time of the transfer was insolvent or, if not insolvent at the time of the transfer, that the transfer caused the debtor to become insolvent; and (iii) the debtor did not receive reasonably equivalent value (or fair consideration) for said transfer.[35]

The Defendants also assert that the Complaint did not specify whether it was asserting a claim for actual or constructive fraud, and either way, it failed to meet the pleading standards for these types of fraud.[36] They argue that if it asserted a claim for constructive fraud, the Complaint must have been pled pursuant to the requirements of Federal Rule of Civil Procedure 8.[37] They argue that pursuant to that rule, to adequately plead a claim for fraudulent transfer under New York law, a Complaint must allege there was a transfer for less than reasonably equivalent value or fair consideration and such transfer was either at a time when a debtor was insolvent or led to a debtor's insolvency.[38] The Defendants assert that the conveyance was for reasonably equivalent value because it was a repayment of the loan held by the Mezz Lender.[39] They point to the BHI Loan Agreements, which they allege directed the Debtor to pay off the Mezz Lender with the remaining funds from the loan.[40] They also assert that the Debtor was not insolvent when the

---

[35] Id. at 10.
[36] Id. at 11-22.
[37] Id. at 11 (citing Alameda Rsch. Ltd. v. Giles (In re FTX Trading Ltd.), Nos. 22-11068 (JTD), 23-50380 (JTD), 23-50379 (JTD), 2024 WL 4562675 at *12 (Bankr. D. Del. Oct. 23, 2024)).
[38] Id. (citing White Oak Com. Fin., LLC v. EIA Inc., No. 650346/2023, 2023 WL 6314634, at *10 (N.Y. Sup. Ct. Sep. 27, 2023); In re FTX Trading Ltd., 2024 WL 4562675, at *12).
[39] Id.
[40] Id. at 3.

conveyance was made, and the conveyance did not cause the Debtor to become insolvent.[41] Rather, they argue that other factors led to the insolvency, and they note that the Debtor did not default on the BHI Loan until October 27, 2021.[42]

The Defendants also assert that if the Complaint is attempting to plead actual fraud, it fails to do so.[43] They argue that to adequately plead actual fraud under New York law, a complaint must meet the heightened pleading standards under Federal Rule of Civil Procedure 9(b).[44] The Defendants argue that the Complaint fails to allege facts to establish direct or circumstantial evidence of intent to defraud.[45]

Regarding the second through fifth counts asserted under 11 U.S.C. § 550, the Defendants argue that the Complaint fails to allege adequately there was a recoverable transfer because the first count did not meet the pleading standards to establish fraud.[46] They also argue that even if it were a fraudulent transfer, the damages would be limited to the unsecured debt on the petition date rather than

---

[41] Id. at 11.

[42] Id.

[43] Id.

[44] Id. at 20 (citing Brennan v. 3250 Rawlins Ave. Partners, LLC, 99 N.Y.S.3d 5, 6 (N.Y. App. Div. 2019); In re Cred. Inc., 650 B.R. 803, 834 (Bankr. D. Del. 2023)).

[45] Motion to Dismiss at 20. The Defendants also argue that that the transfers cannot be fraudulent and voidable under both the earmarking doctrine and the collapsing doctrine. Id. at 22-26. They argue that under the earmarking doctrine, the conveyance funds were never property of the Debtor because they were earmarked for transfer to the Mezz Lender as part of the conveyance. Id. at 22-24. Further, under the collapsing doctrine, they argue that the Court should collapse the multiple transactions to examine the substance rather than the form, and that if the transactions are collapsed, it is clear that the intent of the original conveyance from BHI was to pay off the Mezz Lender's loans to the Debtor. Id. at 24-26. However, those arguments are factual arguments that are not appropriate at this stage and should in fact be decided in favor of the Plan Administrator and against the Defendants. See Black v. Montgomery County, 835 F.3d 358, 364 (3d Cir. 2016), as amended (Sept. 16, 2016) (quoting Phillips v. County of Allegheny, 515 F.3d at 233).

[46] Id. at 26-27.

the full amount of the conveyance.[47] The Defendants also assert that, concerning

counts three through five, the Complaint does not allege facts sufficient to support

that Northwind RE, Northwind GP, or Ran Eliasaf actually received any portion of

the conveyance, or if they did, it was not in good faith but with knowledge of the

voidability.[48]

## II.    Analysis

### A. Standard of Review

The Defendants argue that this Complaint should be dismissed according to

Federal Rule of Civil Procedure 12(b)(6), made applicable to this adversary

proceeding through Bankruptcy Rule 7012, for failure to state a claim upon which

relief may be granted. A complaint will survive a Rule 12(b)(6) motion to dismiss

when it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'"[49] "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."[50] The complaint

must "'give the defendant fair notice of what the . . . claim is and the grounds upon

which it rests.'"[51] Detailed facts are not necessary, but "a plaintiff is required to put

the defendant on notice as to the basics of the plaintiff's complaint [and] to set forth

the facts with sufficient particularity to apprise the defendant fairly of the charges

---

[47] Id. at 26.

[48] Id. at 28.

[49] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

[50] Id. (quoting Twombly, 550 U.S. at 570).

[51] Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 1964).

made against him so that he can prepare an adequate answer."[52] Therefore, a complaint must present well-pleaded facts, not mere conclusory statements, that establish the prima facie elements of the claim.[53]

In considering a motion to dismiss, the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."[54] In its review, a court may look to "the complaint and attached exhibits[.]"[55] A court may only look at documents outside the pleadings under certain circumstances. For example, a court may look at outside documents if they are "integral to or explicitly relied upon in the complaint."[56] A court may also look at outside documents if they are "items subject

---

[52] In re Zohar III, Corp., 639 B.R. 73, 89 (Bankr. D. Del.), aff'd, 620 F. Supp. 3d 147 (D. Del. 2022) (internal quotations omitted).

[53] Twombly, 550 U.S. at 556-57 (explaining that "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable" and that mere conclusory allegations will not suffice).

[54] Black v. Montgomery County, 835 F.3d at 364 (explaining courts must "accept all factual allegations as true[ and] construe the complaint in the light most favorable to the plaintiff" (quoting Phillips v. County of Allegheny, 515 F.3d at 233).

[55] Philip A. Templeton, M.D., P.A. v. EmCare, Inc., 868 F. Supp. 2d 333, 338 (D. Del. 2012).

[56] In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997); see also Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."); In re Donald J. Trump Casino Sec. Litig., 7 F.3d 357, 368 n. 9 (3d Cir. 1993) (noting that a court "may consider an undisputedly authentic document . . . if the plaintiff's claims are based on the document[]"); In re Zohar III, Corp., 639 B.R. at 90 (explaining that in considering a motion to dismiss, a court may, for example, review "documents attached to a complaint and any undisputedly authentic documents upon which the claims are based[]"). The reason for this exception is that "the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated where the plaintiff has actual notice and has relied upon these documents in framing the complaint." In re W.J. Bradley Mortg. Cap., LLC (Miller v. Bradley), 598 B.R. 150, 164 (Bankr. D. Del. 2019) (cleaned up). To determine whether documents were used to frame the complaint, the court must look at "whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited." Id.

to judicial notice, matters of public record, orders, and items appearing in the record

of the case."[57] A bankruptcy court reviewing a complaint may only use documents

filed in the underlying bankruptcy case if their use "can be justified under the

judicial notice doctrine."[58]

### B. The Court May Consider the BHI Loan Agreement, But Not the Declaration

At the outset, the parties disagree over which documents this Court can

review in considering the Motion to Dismiss. The Defendants request that, in

addition to the Complaint and its attached exhibits, this Court review the BHI Loan

documents[59] and the first day declaration (the "Declaration")[60] of Nat Wasserstein,

the Plan Administrator.[61] The Plan Administrator argues that this Court cannot

review those documents because they were not attached to the Complaint.[62]

The Court may review the BHI Loan documents because they were integral

to and relied upon by the Complaint. The crux of the Plan Administrator's claim is

that the Debtor improperly diverted BHI Loan funds to the Defendants.[63] The BHI

---

[57] Cred Inc. Liquidation Tr. v. Uphold HQ Inc., 650 B.R. 803, 820 (Bankr. D. Del. 2023) (quoting Pinkney v. Meadville, No. 21-1051, 2022 U.S. App. LEXIS 13824, at *4-5 (3d Cir. May 23, 2022)).
[58] Nantucket Inves. II v. Cal. Fed. Bank (In re Indian Palms Assocs.), 61 F.3d 197, 204 (3d Cir. 1995).
[59] Bank of Hapoalim B.M. Proof of Claim No. 16 Ex. A, Plan Administrator v. 225 Bowery Mezz Lender LLC, Case No. 23-10094 (TMH) (the "BHI Loan").
[60] Affidavit/Declaration in Support of First Day Motion at 11, Plan Administrator v. 225 Bowery Mezz Lender LLC, Case No. 23-10094 (TMH) (the "Declaration") [D.I. 19].
[61] Hr'g Tr. 14-15, June 17, 2025 ("Tr.") [D.I. 19].
[62] Id. at 22.
[63] Compl. at 9 (describing the distribution of the BHI Loan proceeds). The Plan Administrator also attached the BHI Loan Closing Statement to the Complaint. Id. Ex. B.

Loan documents are thus integral to the Complaint because they formed the transaction that the Plan Administrator now disputes.[64]

On the other hand, the Declaration is not integral to (nor even mentioned in) the Complaint. Alternatively, the Defendants urge this Court to take judicial notice of the contents of the Declaration, but this argument fails as well.[65] The Supreme Court has explained that judicial notice allows courts reviewing a motion to dismiss to "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, . . . matters of which a court may take judicial notice."[66] Federal Rule of Evidence 201(b), made applicable here through Federal Rule of Bankruptcy Procedure 9017, allows a court to take judicial notice of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." The Declaration's assertions of fact are just that: mere assertions. Because assertions of fact are subject to dispute until a judicial determination, they do not meet the standard for judicial notice.

---

[64] Cf. In re Donald J. Trump Casino Sec. Litig., 7 F.3d at 368 n. 9 (finding that, even though the plaintiff did not attach the prospectus in question to their complaint, the court may review it in deciding the motion to dismiss because the complaint directly challenged the prospectus).

[65] At the Hearing, this Court asked the Defendants whether they were requesting it take notice of the Declaration's "existence or notice of all the contents[.]" Tr. at 32. The Defendants clarified their request was for the Court to take notice of the Declaration's contents. Id. at 33. See In re Zohar III, Corp., 639 B.R. at 90 (explaining that a court "need not feel constrained to accept as truth . . . [pleadings] that are contradicted . . . by facts of which the court may take judicial notice").

[66] Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. at 322 (citing 5B Wright & Miller § 1357 (3d ed. 2004 and Supp. 2007).

The Defendants also argue that this Court may consider the contents of the Declaration because " [the Plan Administrator is] making statements in the complaint that are contradictory to statements that are in the declaration."[67] However, Defendants do not cite any proposition to support the contention that a court considering a motion to dismiss may review a document outside the pleading merely because it contradicts an allegation made in the Complaint.[68] Thus, the Court does not review the Declaration in its consideration of the Motion to Dismiss.

### C. The Motion to Dismiss

The Motion to Dismiss is denied because the Complaint sufficiently alleges the prima facie elements of its claims, and all of Defendants' counterarguments fail.

Beginning with the first count, the Complaint's failure to specify the state law is not dispositive because a complaint need only "plead[] actual content that allows the court to draw the reasonable inference that the defendant is liable for the

---

[67] Tr. at 33.

[68] Notwithstanding the Defendants' failure to provide supporting caselaw, even if the Court were to accept this contention as a valid theory, the Declaration does not contradict the Complaint and is thus still inadmissible. The Defendants note that while the Complaint alleges that the transfer to the Defendants caused the Debtor's insolvency, the Declaration alleges that poor management contributed to the insolvency. Tr. at 15 ("In the first day declaration, . . . the real impetus of this bankruptcy was not to the BHI loan, it was Ace, and Ace's conduct, and Ace's inability to run the hotel."); Declaration at 11. As this Court is well aware, multiple factors can cause a company's eventual insolvency at once, and the ultimate cause is often the confluence of these factors. New York law requires, in a claim for fraudulent transfer, that the plaintiff demonstrate that the contested transfer result in the company's insolvency, not that it be the sole cause. N.Y. Debt. & Cred. Law § 274 (McKinney 2025) ("the debtor became insolvent as a result of the transfer"). The poor management referenced in the Declaration is certainly not mutually exclusive of improper transfers, and both can plausibly result in insolvency.

For the same reasons, even if the Court were to review the Declaration, the Declaration statements to which the Defendants point do not invalidate the Complaint's establishment of its prima facie claims. Therefore, regardless of whether this Court considers it, the Declaration does not change the outcome of this ruling.

misconduct alleged."[69] The Complaint contained sufficient factual allegations for the Defendants to be on notice of their potential liability and for the Court to draw the reasonable inference that the Defendants are liable for the misconduct alleged, even without the state law specified.[70]

Under New York law, the Complaint meets the required pleading standards for either constructive or actual fraud. First, it states facts sufficient to support each element of constructive fraud in New York. New York law provides:

> A transfer is deemed a constructively fraudulent conveyance under NYDCL §§ 273, 274 and 275, if (1) it is made without "fair consideration," and (2) one of the following conditions is met:
>
>> (i) the transferor is insolvent or will be rendered insolvent by the transfer in question, [NY]DCL § 273; (ii) the transferor is engaged in or is about to engage in a business transaction for which its remaining property constitutes unreasonably small capital, [NY]DCL § 274; or (iii) the transferor believes that it will incur debt beyond its ability to pay, [NY]DCL § 275.[71]

The Complaint alleges that the conveyance was made without fair consideration or not in exchange for reasonably equivalent value because, in consideration for the Mezz Lender receiving the $15 million ahead of other creditors, the Debtor only received the satisfaction of its debt to the Mezz Lender.[72] The Defendants assert that there was fair consideration, citing to the BHI Loan,

---

[69] Iqbal, 556 U.S. at 678; Jankowicz v. Fox News Network, LLC, No. CV 23-513-CFC, 2024 WL 3510309, at *1 (D. Del. July 22, 2024) (quoting id.).

[70] Phillips v. County of Allegheny, 515 F.3d at 233 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 1964) (requiring only that the Complaint "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests'").

[71] In re Nanobeak Biotech Inc., 656 B.R. 350, 362-63 (Bankr. S.D.N.Y. 2024).

[72] Compl. at 14.

which directed the Debtor to pay off the Mezz Loan with the remaining proceeds.[73]

However, the BHI Loan's direction to use the proceeds to satisfy the Mezz Loan does

not compel the conclusion that there was fair consideration. That a conveyance is

made at the behest of a third party does not mean it cannot be fraudulent. What the

Debtor received from the transaction (satisfaction of its debt to the Mezz Lender) is

not reasonably equivalent to what the Mezz Lender received from the transaction

(satisfaction of its loan to the Debtor plus the advantage of leapfrogging other more

senior creditors).[74] The Debtor and the Mezz Lender agreed to a loan that was

structurally junior to other creditors; the Mezz Lender cannot later receive the

benefit of a change in those terms without any consideration for the Debtor.[75]

Similarly, the Complaint alleges that the conveyance rendered the Debtor

insolvent, the Debtor's remaining capital constituted unreasonably small capital,

and the Debtor incurred debt beyond its ability to pay.[76] The Complaint alleges that

when the conveyance occurred, the Debtor owed numerous other creditors and was

not able to pay those creditors as a result.[77] Some of those creditors, the Complaint

alleges, still have not been paid.[78] The Complaint also alleges that the Debtor was

unable to pay these other creditors because without the remaining proceeds from

---

[73] Motion to Dismiss at 3.

[74] See In re Reisner, 357 B.R. 206, 211 (Bankr. E.D.N.Y. 2006) ("The determination of whether the debtor received reasonably equivalent value for his interest requires the court to compare what was given with what was received." (internal quotations omitted)).

[75] See Est. of Anglin ex rel. Dwyer v. Est. of Kelley ex rel. Kelley, 270 A.D.2d 853, 854 (2000) ("[A]ny change in an existing contract must have a new consideration to support it." (internal quotations omitted)).

[76] Compl. at 14.

[77] Id. at 2.

[78] Id.

the BHI Loan, it was undercapitalized.[79] Thus, it alleges that the conveyance led to the Debtor's insolvency.

The Defendants argue that because the Debtor did not file for bankruptcy until years after the conveyance, it could not have led to the Debtor's insolvency.[80] However, again, this contention is a factual dispute that is not appropriate at this stage.[81] The Complaint contains adequate allegations to show "more than a sheer possibility" that the contested conveyance rendered the Debtor insolvent.[82] Thus, the Complaint alleges facts sufficient to meet each element of constructive fraud.[83]

The Complaint also sufficiently alleges actual fraud because it alleges intent to defraud.[84] New York law requires that to establish actual fraud, a plaintiff must allege intent to defraud.[85] The Complaint alleges several of the badges of fraud often used to prove fraudulent intent.[86] For example, it alleges that the transferees were all insiders of the Debtor, that there was little consideration for the conveyance, and that a large amount of money was transferred while the Debtor had several other higher priority debts.[87]

---

[79] Id. at 14.
[80] Motion to Dismiss at 18-19.
[81] Iqbal, 556 U.S. at 678 ("[F]or the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true[].").
[82] Id.
[83] The Defendants do not dispute that the conveyance was within the lookback period.
[84] In re Nanobeak Biotech Inc., 656 B.R. 350, 366 ("Thus, to adequately plead a claim for actual fraudulent transfer under NYDCL § 276, the complaint must allege fraudulent intent related to the transaction at issue.").
[85] Id. at 366.
[86] See Chen v. New Trend Apparel, Inc., 8 F. Supp. 3d 406, 438 (S.D.N.Y. 2014); In re FTX Trading Ltd., 2024 WL 4562675 at *7.
[87] Compl. at 2, 4, 14.

Finally, because the Complaint has met the pleading standards for the first count, Defendants' argument that the first count's insufficiency compels the second count's dismissal fails.[88] And, because their argument concerning the cap on damages is again a factual dispute, it should not be decided at this stage.[89]

Accordingly, this court orders that the Motion to Dismiss is denied.

Dated: August 25, 2025
Wilmington, Delaware

_____
Thomas M. Horan
United States Bankruptcy Judge

---

[88] Motion to Dismiss at 26.
[89] Iqbal, 556 U.S. at 678 ("[F]or the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true.").