# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>225 BOWERY LLC,<br><br>   Reorganized Debtor.[1] | Chapter 11<br><br>Case No. 23-10094 (TMH) |
| PLAN ADMINISTRATOR, FOR AND ON BEHALF OF REORGANIZED DEBTOR 225 BOWERY LLC,<br><br>   Plaintiff,<br><br>v.<br><br>225 BOWERY MEZZ LENDER LLC, NORTHWIND RE, LLP, NORTHWIND RE GP LLC, AND RAN ELIASAF,<br><br>   Defendants. | Adv. Proc. No. 25-50018 (TMH) |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION FOR RECONSIDERATION

**MORRIS JAMES LLP**
Tara C. Pakrouh (DE Bar No. 6192)
3205 Avenue North Blvd., Suite 100
Wilmington, Delaware 19803
Telephone: (302) 888-6800
E-mail: tpakrouh@morrisjames.com

**MORRISON COHEN LLP**
Heath D. Rosenblat (admitted *pro hac vice*)
Dawn R. Sudama (admitted *pro hac vice*)
909 Third Avenue, 27th Floor
New York, New York 10022
Telephone: (212) 735-8600
E-mail: hrosenblat@morrisoncohen.com
E-mail: dsudama@morrisoncohen.com

*Counsel for 225 Bowery Mezz Lender LLC,*
*Northwind RE LLP, Northwind RE GP LLC, and Ran Eliasaf*

Dated: September 8, 2025
Wilmington, Delaware

---

[1] The Reorganized Debtor in this chapter 11 case, along with the last four digits of the Debtor's federal tax identification number is 225 Bowery LLC (1333). The location of the Debtor's service address is: 187 Chrystie Street, New York, NY, 10002.

17520139/1

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

FACTUAL BACKGROUND ......................................................................................................2

PROCEDURAL HISTORY ..........................................................................................................5

LEGAL STANDARD ...................................................................................................................6

ARGUMENT .................................................................................................................................7

I.   The Court's August 25th Order Appears to Improperly Make a Final
     Determination of Fact that would be Improper at this Phase ..............................................7

II.  The Court Failed to Apply the BHI Loan and the NW Mezz Loan Terms
     to the Alleged Transfer. ......................................................................................................9

III. The Court Incorrectly Declined to Take Judicial Notice of the
     Wasserstein Declaration. ...................................................................................................12

CONCLUSION ............................................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re AIO US, Inc.*,
  2025 WL 2426380 (Bankr. D. Del. Aug. 21, 2025) ...................................................................13

*In re Arizona Theranos, Inc., Litigation*,
  2017 WL 4337340 (D. Ariz. Sept. 29, 2017) ...............................................................................8

*Brambles USA, Inc. v. Blocker*,
  735 F. Supp. 1239 (D. Del. 1990) ................................................................................................7

*In re F-Squared Inv. Mgmt., LLC*,
  2019 WL 4261168 (Bankr. D. Del. Sept. 6, 2019) ....................................................................13

*Harsco Corp. v. Zlotnicki*,
  779 F.2d 906 (3d Cir. 1985) ........................................................................................................6

*In re Indian Palms Assocs., Ltd.*,
  61 F.3d 197 (3d Cir. 1995) ........................................................................................................13

*Max's Seafood Café v. Quinteros*,
  176 F.3d 669 (3d Cir. 1999) ........................................................................................................6

**Statutes**

United States Code title 11 chapter 11 ..............................................................................5, 13, 14, 1

**Other Authorities**

Bankruptcy Rule 9023 ................................................................................................................6, 7

Fed. R. Bankr. P. 9024 ....................................................................................................................7

Fed. R. Civ. P. 60(b) .......................................................................................................................7

Federal Rule 59(e) ..........................................................................................................................6

Federal Rule 60(b) ..........................................................................................................................7

Federal Rules of Bankruptcy Procedure Rules 9023 and 9024 ......................................................1

Federal Rules of Civil Procedure Rules 59(e), and 60(b) ..............................................................1

12 MOORE'S FEDERAL PRAC. – CIVIL § 60.41 (2018) ....................................................................7

Rule 60(b) .......................................................................................................................................7

Defendants in the above-captioned adversary proceeding, 225 Bowery Mezz Lender LLC, Northwind RE, LLP, Northwind RE GP LLC, and Ran Eliasaf (collectively, "**Movants**"), respectfully submit this memorandum of law in support of their motion ("**Motion**") pursuant to Rules 59(e), and 60(b) of the Federal Rules of Civil Procedure ("**Federal Rules**"), as incorporated by Rules 9023 and 9024 of the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**"), to reconsider certain portions of the *Memorandum Opinion and Order* [Adv. D. I. 20] ("**August 25th Order**") denying *Defendants' Motion to Dismiss the Complaint to Avoid and Recover Fraudulent Conveyance* [Adv. D.I. 9] ("**Motion to Dismiss**").

## PRELIMINARY STATEMENT[2]

On August 25, 2025, the Court denied Defendants' Motion to Dismiss. In doing so, Defendants respectfully submit the Court's August 25th Order made errors of law and fact that would result in manifest injustice to Defendants for three reasons. First, the August 25th Order is written in a manner that suggests the Court has already made a ***final determination*** on whether the alleged fraudulent transaction—the heart of the Reorganized Debtor's complaint and from which the other counts stem—was made for reasonably equivalent value or fair consideration. At this stage of a litigation, rulings from a court should be interlocutory and should not venture in conclusive outcome determinative findings. This language effectively forecloses Defendants' ability to conduct discovery on whether reasonably equivalent value was in fact exchanged for the transfer at issue. Next, the Court failed to address and apply the terms of both the BHI Loan Agreement and the NW Loan Agreement to the transfer at issue. That documentation required that the mezzanine lenders be paid off at the time of the BHI financing. The repayment was not a new

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion to Dismiss.

17520139/1

term, but rather an existing obligation that predated any new senior financing on the property and needed to be addressed as part of the BHI Loan. Finally, the Court incorrectly declined to take judicial notice of a declaration used to support the Debtor's first-day pleadings and that was used verbatim over a year later as source for statements supporting the plan process. The first day declaration was subject to cross-examination and admitted into evidence, becoming part of the record in the Debtor's bankruptcy proceeding. Defendants respectfully request that the Court reconsider each of these portions of its August 25th Order, or at least clarify that its discussion on value is interlocutory and not a final factual finding, and accordingly issue an amended order.

## FACTUAL BACKGROUND

On or about February 14, 2017, the Prior Hotel Owners entered into the Bank of Ozarks Mortgage Loan Agreements for an aggregate principal amount of $45 million dollars. Pursuant to the Bank of Ozarks Mortgage Loan Agreements, the Hotel and certain other assets of the Prior Hotel Owners were provided as collateral on a secured basis.

Also, on or about February 14, 2017, Mezz Borrowers entered into that certain Mezzanine Loan Agreement, dated as of February 14, 2017 ("**NW Loan Agreement**"), with NW Mezz Lender. Complaint at ¶ 28, Ex. A. Pursuant to the NW Loan Agreement, NW Mezz Lender loaned the Mezz Borrowers $15 million. *Id.* at ¶ 31. Under the NW Loan Agreement, the Mezz Borrowers pledged 100% of their membership interest in the Prior Owners, the entities that held the interest in the Hotel as collateral to NW Mezz Lender. *Id.* at ¶¶ 18, 21, 24, 35.

Between February 2017 and March 2019, there were discussions between the Prior Owners and Bank Hapoalim B.M. ("**BHI**") regarding BHI refinancing the Bank of Ozarks Mortgage Loan. *Id.* at ¶ 37. As part of the refinancing, BHI required the Hotel to be transferred to a new entity and for BHI to have a security interest in the Hotel. *Id.* To accomplish this, various entities needed to be merged, specifically: (a) KAL Mezz and KAL Bowery, along with all their interests and

2

liabilities, were merged into KAL; (b) TLLULE Mezz and TLLULE Bowery, along with all their interests and liabilities, were merged into TLLULE; and (c) VNAA Mezz and VNAA Bowery, along with all their interests and liabilities, were merged into VNAA ("**March Merger**"). *Id*. at ¶ 38.

After the March Merger, Bowery Group and 225 Bowery were formed in 2019 as a pre-condition for the BHI Mortgage Loan. *Id*. The Bowery Group Equity were each given a percentage of ownership in Bowery Group. *Id*. at ¶ 39, Ex. D. Accordingly, the Bowery Group Equity became the three owners of Bowery Group, which wholly owns 225 Bowery, which owns the Hotel. *Id*. at ¶¶ 38, 39, Ex. D.

As a result of the March Merger, NW Mezz Lender's security interest in the membership interest of the Prior Owners was transferred, thereby giving NW Mezz Lender a security interest in 100% of the membership interest in the Bowery Group Equity, which in turn was a 100% secured interest in Bowery Group, 225 Bowery, and ultimately the Hotel. *See id*. at Ex. D. Given BHI's preference to have the only lien on the Hotel, upon information and belief, BHI wanted NW Mezz Lender's interest in the Bowery Equity Group Holders cancelled. BHI did not intend or want another lender to have a security interest in the Hotel. *See generally*, the BHI Loan Agreement and Financing Documents (containing language in various sections regarding BHI's interest in any manner (direct or indirect) in the Hotel and 225 Bowery being superior).

Under section 1.1 of the BHI Loan Agreement, "Financing Documents" means

this Mortgage, the Note, the Loan Agreement, the Guaranty, the Assignment of Leases, the Environmental Indemnity, and any and all other documents which the Mortgagor, the Guarantors, or any party or parties have executed and delivered, or may hereafter execute and deliver, to evidence, secure or guarantee the Obligations, or any part thereof, as the same may from time to time be extended, amended, restated, supplements or otherwise modified.

3

BHI Loan Agreement, § 1.1 (emphases added). Although the Complaint discusses the BHI Mortgage Loan negotiations, it conveniently omits the term sheet negotiated between BHI and 225 Bowery for the BHI Mortgage Loan, a "Financing Document" that David Paz, a guarantor under the BHI Mortgage Loan, executed ("**BHI Term Sheet**"), attached to the Eliasaf Declaration as Exhibit A. Pursuant to the BHI Term Sheet, the "Collateral" under the BHI Mortgage Loan included a "[f]irst priority perfected lien on the [Hotel], against [225 Bowery's] interest in the Hotel." *See* Eliasaf Dec., Ex A, at p. 3. Further, the opening paragraph of the BHI Term Sheet states that the "purpose [was] refinancing the existing (approximately $60M) development loan . . ." *Id*. at p. 1. This amount clearly reflects the Bank of Ozarks Mortgage Loan ($45 million) and the NW Mezz Loan ($15 million). Additionally, the BHI Term Sheet lays out that the full loan amount could be as much as $80 million, but clearly states that $68 million (65% of projected cost)[3] will be funded at closing. *Id*. at pp.1-2.

The BHI Loan Closing Statement is another Financing Document addressing BHI's concern regarding NW Mezz Lender's interest. Complaint, Ex. B. This document was prepared by Royal Abstract, the title company involved with the transaction. *Id*. at pp. 1-2. The BHI Loan Closing Statement was verified and executed by 225 Bowery—obviously in connection with the BHI Mortgage Loan. *See id*. Above 225 Bowery's signature on the BHI Loan Closing Statement is an affirmation that the BHI Loan Closing Statement was "a true and correct statement of the settlement of the [BHI Loan Agreement]." *See id*. at p. 2. As evidenced in the BHI Loan Closing Statement and BHI's wiring of the loan proceeds, BHI approved and earmarked approximately $15 million of the BHI Mortgage Loan to paying NW Mezz Lender the remaining obligations under the NW Mezz Loan ("**Loan Payoff**"). *See id*. at p. 1.

---

[3]    BHI Loan Agreement, at § 2.1(c)(v).

225 Bowery's signing of the BHI Loan Closing Statement affirmed its understanding of the negotiated and required Loan Payoff. *See generally id*. at pp. 1-2. In return for the Loan Payoff, NW Mezz Lender released its security interests in the membership interests of the Bowery Group Equity, which in turn released NW Mezz Lender's ultimate interests in the Hotel. This left BHI, after the execution of the BHI Mortgage Loan, as the first-priority and sole lienholder against the Hotel without any overhang from NW Mezz Lender.

## PROCEDURAL HISTORY

On January 24, 2023, 225 Bowery filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code ("**Bankruptcy Code**"). Compl. ¶ 58. In support of its first day motions, 225 Bowery submitted the *Declaration of Nat Wasserstein, Chief Restructuring Officer of Debtor 225 Bowery LLC, in Support of Debtor's Petition and First Day Motion* [D.I. 19] ("**Wasserstein Declaration**"). Ultimately, on June 28, 2024, 225 Bowery filed its *Second Modified Third Amended Chapter 11 Plan of 225 Bowery LLC Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 637] ("**Plan**"). The Plan was confirmed by order [D.I. 641] dated June 28, 2024. The Plan went effective on July 18, 2024 [D.I. 653] and 225 Bowery emerged from bankruptcy. Pursuant to the Plan, Nat Wasserstein was appointed as the plan administrator for and on behalf of the Reorganized Debtor ("**Plan Administrator**"). *See Plan*, Art. VII.

On January 23, 2025, the Plan Administrator filed the *Complaint to Avoid and Recover Fraudulent Conveyance* [Adv. D.I. 1] ("**Complaint**") against the Defendants commencing this adversary proceeding and seeking to avoid, among other things, the Loan Payoff. Case No. 25-50018 (TMH) ("**Adversary Proceeding**"). On March 14, 2025, the Defendants filed the Motion to Dismiss [Adv. D.I. 8], a *Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint to Avoid and Recover Fraudulent Conveyance* [Adv. D.I. 9] ("**Opening Brief**"), and *Declaration of Ran Eliasaf in Support of the Memorandum of Law in Support of Defendants'*

5

*Motion to Dismiss the Complaint to Avoid and Recover Fraudulent Conveyance* [Adv. D.I. 10] ("**Eliasaf Declaration**"). The Plan Administrator filed its opposition to the Motion to Dismiss on April 14, 2025 [Adv. D.I. 12], and Defendants filed their reply brief supporting the Motion to Dismiss on May 7, 2025 [Adv. D.I. 13]. The Court held oral argument on the Motion to Dismiss on June 17, 2025. *See Declaration of Tara C. Pakrouh in Support of Defendants' Motion for Reconsideration* filed contemporaneously herewith ("**Pakrouh Declaration**") at Tab 2 ("**Motion to Dismiss Tr.**").

During oral argument, Defendants offered to provide additional briefing to the Court regarding whether the Court could review the first day declaration to determine if it contradicts allegations in the Complaint. Motion to Dismiss Tr. at 38:18-39:7; 42:16-19; 50:20-24. The Court informed Defendants that additional briefing was not necessary (Motion to Dismiss Tr. at 50:25). On August 25, 2025, the Court issued its opinion and order denying Defendants' Motion to Dismiss. Movants contend in doing so, the Court inappropriately and improperly: (a) made final determinations of fact regarding the "reasonably equivalent value" element of the Reorganized Debtor's constructive fraudulent transfer claim; (b) failed to and, also, misapplied the terms and conditions of the BHI Loan Documents and NW Loan Agreement to the questioned transfer; and (c) erroneously declined to take judicial notice of a declaration admitted into evidence despite counsel's request to provide supporting law. Movants respectfully request the Court reconsider portions of the August 25th Order accordingly.

## LEGAL STANDARD

A motion for reconsideration under Bankruptcy Rule 9023 and Federal Rule 59(e) is used to "correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). Reconsideration may be granted if the moving party shows a "need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood*

6

17520139/1

*Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). Reconsideration is appropriate when the Court has "made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Brambles USA, Inc. v. Blocker*, 735 F. Supp. 1239, 1240 (D. Del. 1990).

Similarly, Bankruptcy Rule 9023 and Federal Rule 60(b) permit relief from a judgment or order when, *inter alia*, there is mistake, inadvertence, surprise, excusable neglect, or for any other reason that justifies relief. *See* Fed. R. Civ. P. 60(b); Fed. R. Bankr. P. 9024. Under Rule 60(b), the grounds for correcting a legal error or mistake are similar. *See* 12 MOORE'S FEDERAL PRAC. – CIVIL § 60.41 (2018).

## ARGUMENT

I. **The Court's August 25th Order Appears to Improperly Make a Final Determination of Fact that would be Improper at this Phase.**

In the August 25th Order, the Court appears to make a final determination of fact regarding whether the alleged fraudulent conveyance was for reasonably equivalent value: "What the Debtor received from the transaction (satisfaction of its debt to the Mezz Lender) ***is not reasonably equivalent*** to what the Mezz Lender received from the transaction (satisfaction of its loan to the Debtor plus the advantage of leapfrogging other more senior creditors)." Adv. D.I. 20 at p. 15 (emphasis added). Additionally, in support for this proposition, the Court cited a summary judgment decision from a court that had an evidentiary record before it—not authority similar to the current phase of litigation of this action that has no evidence or record before the Court other than the Complaint. *Id.* (citing *In re Reisner*, 357 B.R. 206, 211 (Bankr. E.D.N.Y. 2006)). If this statement that the transaction was "not reasonably equivalent," stands as an effective finding of fact on this issue, it would be an error at this stage of the case and would cause great injustice to Movants.

7

17520139/1

A court making a premature factual determination is a proper basis *to grant* a motion for reconsideration. *E.g. In re Arizona Theranos, Inc., Litigation*, 2017 WL 4337340 (D. Ariz. Sept. 29, 2017) (granting motion for reconsideration where court made premature factual determination that research and development was not the essential purpose for blood draws, but rather a collateral purpose). A determination by the Court of this factual question during the motion to dismiss phase is improper and would deprive Defendants of the opportunity to seek discovery into whether the transaction was for reasonably equivalent value. Moreover, to the extent the Court intended this to be a finding, the Court's final determination of this question would have been made without review of one of the few documents that Defendants offered to the Court. Adv. D.I. 20 at p. 13 ("Thus, the Court does not review [first day declaration of Nat Wasserstein, the Plan Administrator] in its consideration of the Motion to Dismiss.").

Moreover, the question: "Did the Plaintiff receive reasonably equivalent value from the transaction?" was not an adversarial issue that was presented to the Court at this time. Instead, the issue presented to the Court was: "Did Plaintiff plausibly plead that it did not receive reasonably equivalent value from the transaction?" This is where the Court's determination at this stage should have ended. It is entirely different to state that a Reorganized Debtor plausibly pled an element of a claim in a complaint than it is to make a final determination of fact that such element was satisfied. This is especially improper when there has been no discovery in the case and the Court expressly declined to consider evidence that the Defendants attempted to introduce in their Motion to Dismiss.

For these reasons, Defendants respectfully request the Court clarify and reconsider that portion of its Opinion stating that "[w]hat the Debtor received from the transaction (satisfaction of its debt to the Mezz Lender) is not reasonably equivalent to what the Mezz Lender received from

the transaction (satisfaction of its loan to the Debtor plus the advantage of leapfrogging other more senior creditors)" [Adv. D.I. 20 at p. 15] was not, and should not be at this stage of the litigation between the parties, intended as a final determination that there was no reasonable equivalent exchange of value or fair consideration for the transaction in question.

## II. The Court Failed to Apply the BHI Loan and the NW Mezz Loan Terms to the Alleged Transfer.

The Court also made a clear error or a misapprehension of fact regarding the BHI Loan and the NW Mezz Loan documents. The Court states that there was a "change" in the terms of the loan without any consideration provided to the Debtors. Adv. D.I. 20 at p. 15, n.75. But there was no change in the terms of either the BHI Loan Agreement (as it was the newly entered-into and agreed-to loan) or the then existing NW Loan Agreement. The NW Loan Agreement (attached to the Complaint as an exhibit) and the BHI Loan Agreement (argued by Movants and ruled on by the Court in the August 25th Order) were both determined appropriate for the Court to consider as documents integral to the Complaint. Under the NW Loan Agreement, it was always required that the NW Mezz Lender be paid off through the consolidation and any new senior financing—so not a single term was changed. All that occurred was honoring the terms of the existing NW Loan Agreement.

The Reorganized Debtor's theory—that the loan could have been made at $68 million as if the mezzanine obligations did not exist—is incorrect and actually cuts against their argument of insolvency. Motion to Dismiss Tr. 10:5-8. The record demonstrates the opposite: the $68 million loan amount was structured precisely because the existing mezzanine loan had to be satisfied. The BHI Loan Closing Statement confirms this—$45 million was used to pay off Bank of Ozarks, and the remaining $15 million was directed to retire the mezzanine loan. These were not discretionary "remaining proceeds," but rather a required payoff of the mezzanine position as a condition of the

9

senior financing. Absent in the August 25th Order is any discussion, analysis, or application of the terms of the NW Loan Agreement in connection with the alleged transfer. The failure to apply the terms and conditions of the governing loan documentation to the transfer at issue was and is critical and improper. Moreover, the entity consolidation required by BHI combined with the Reorganized Debtor's theory would essentially leave the NW Mezz Lender with no recourse.

The contractual provisions of the NW Loan Agreement make the NW Mezz Loan payment requirement unmistakable. Section 2.12 of the NW Loan Agreement restricts prepayments but expressly permits them in connection with a refinancing when the senior loan is paid off *simultaneously*. Motion to Dismiss Tr. 11:12-23 (emphasis added). Section 2.12(d) further requires that any prepayment be either permitted by the senior lender or accompanied by a *concurrent* payoff in full of the senior loan. This reflects the standard practice in commercial lending that a senior lender does not permit subordinate financing, whether subordinate mortgage financing or mezzanine financing, to be paid off prior to the senior lender being paid off. Section 7.1(f) designates consolidation or merger of the owner entities as an event of default, which meant that BHI could not have extended financing into a structure where the mezzanine obligations remained outstanding. Motion to Dismiss Tr. 12:1-9. Likewise, the definition of "Indebtedness" prohibits the borrower or owner from incurring additional debt outside the senior and mezzanine loans themselves, ensuring that both obligations had to be satisfied before new senior financing could close. Motion to Dismiss Tr. 12:18-13:5. By overlooking and not addressing and applying these provisions, despite counsel's argument on the same, the Court analyzed the alleged transfer in isolation rather than as part of the contractual framework, and in doing so, improperly treated a mandated payoff as a fraudulent conveyance.

Furthermore, Section 3.12 of the BHI Loan Agreement provides a representation that the Debtor was not insolvent. Motion to Dismiss Tr. 6:17-7:12. Insolvency is a fundamental element that the Reorganized Debtor must establish in order to advance a constructive fraudulent transfer claim. Opening Brief, at p. 10-11. The existence of this representation, based on all relevant information available at the time of the transfer, directly undercuts the viability of the claim asserted against Movants in this action. The Court's failure to even acknowledge, much less apply, this representation in the language of the governing documentation to the transfer at issue caused a manifest injustice to Defendants.

The argument made by counsel for the Reorganized Debtor that this is in all loan documents and is boilerplate is of no moment, misleading, and wrong. Motion to Dismiss Tr. 28:20-29:15. Doubling down on this proposition, Reorganized Debtor's counsel also pointed out that there was not a solvency opinion offered supporting this statement/representation. Motion to Dismiss Tr. 28:25-29:6. But solvency opinions are not required in connection with real estate loans. There would, however, be an appraisal performed by the lender confirming collateral values so that the representation was true and correct and the loan amounts were supported and in line with the amounts to be lent as compared to the collateral values. As set out in more detail and as attached to the Eliasaf Declaration, such an appraisal was performed and it completely refutes the Reorganized Debtor's allegations concerning solvency.

Further, Section 2.1(c)(v) of the BHI Loan Agreement and the BHI Term Sheet provide that 65% of the projected costs would be funded at closing—meaning that the nearly $68 million funded at closing represents the 65%, leaving overall value of the collateral at roughly $104 million, and an equity cushion of approximately $36 million. As such, any failure to pay creditors was a management failure, not an issue of insolvency. If the Court is permitted to at this point in

11

the litigation and did in fact make a finding on value from the Complaint, it can also make a finding on solvency based on a representation in the BHI Loan Agreement, the appraisal supporting such loan agreement that is to be considered a loan document, and the amount of the loan funded at closing as calculated as part of the articulated 65% loan to value ratio set out in the BHI Loan Agreement and BHI Term Sheet. If the existing mezzanine loan had been left in place, the lender would not have considered the mortgage loan to have such an equity cushion.

Finally, as set out at the hearing, the Reorganized Debtor's multi-step of payment theory is, as the Court is aware, contrary to the integrated refinancing process when mezzanine loans are involved. That theory would either have required the loan to be a much larger amount, breaching the 65% loan to value ratio requirement, or to be made with an existing lien on the borrower's membership interests remaining in place, thereby adversely affecting the lender's collateral.

### III.  The Court Incorrectly Declined to Take Judicial Notice of the Wasserstein Declaration.

In the August 25th Order, the Court also declined to take judicial notice of the Wasserstein Declaration, which was admitted into evidence and subject to cross examination at the first day hearing, for its consideration when reviewing the Motion to Dismiss.  Adv. D.I. 20 at p. 13. Language from that same declaration was also set forth verbatim into the Debtor's disclosure statement, which was approved by the Court and circulated to creditors to vote on the Plan. *Compare* Wasserstein Declaration at ¶¶ 33–34 *with* D.I. 407 at p. 6 ("2. Ace Arbitration Award") *and compare* Wasserstein Declaration at ¶¶ 35, 37 & 39 *with* D.I. 407 at pp.10, 11 ("(e) Ace Litigation").  The Reorganized Debtor's counsel made much of the fact that Mr. Wasserstein was put in place relatively soon (within 24 to 48 hours) of the preparation and completion of his declaration and the filing of the bankruptcy petition to raise the specter of doubt as to the validity or strength of these statements because they were made before gaining more familiarity with the

12

asset and related matters over the course of his tenure in the chapter 11 proceeding. An examination of the record in the chapter 11 proceeding belies this assertion as the Reorganized Debtor's later repeated/reproduced in its own disclosure statement—many times verbatim—the very statements in the Wasserstein Declaration that Movants relied on for showing the inconsistency of these statements as against those made in the Complaint. Contrary to counsel's attempted misdirection, the timing of the statements is irrelevant and were true at the beginning of the case and the end of the case in connection with Plan confirmation. *See* D.I. 407 at pp. 6, 10–11; Motion to Dismiss Tr. 41:15-42:2.

The Court reasoned that the Wasserstein Declaration merely contained "assertions of fact," which are subject to dispute until a judicial determination. Adv. D.I. 20 at p. 12. The Court did not address Movants' argument that "[d]ocuments pertaining to a chapter 11 bankruptcy proceeding are matter of public record and; thus, a court could consider such filings in consideration of a motion to dismiss." Adv. D.I. 13 at 12, n.9. The result here is that the Court made a clear error of law when it declined to review the Wasserstein Declaration, in particular, the substantive paragraphs included therein and in connection with the disclosure statement that contradict statements included in the Complaint. Motion to Dismiss Tr. 17:6-18:9. As Movants mentioned in their briefing, *see* Adv. D.I. 13 at 12 n.9, once a document is ***admitted into evidence*** in a bankruptcy case, it may be considered by the Court. *See In re AIO US, Inc.*, 2025 WL 2426380, at *3 (Bankr. D. Del. Aug. 21, 2025) (court relied on a voting declaration admitted during the confirmation hearing); *In re Indian Palms Assocs., Ltd.*, 61 F.3d 197, 204 (3d Cir. 1995); *In re F-Squared Inv. Mgmt., LLC*, 2019 WL 4261168 (Bankr. D. Del. Sept. 6, 2019) (a court can take judicial notice of filings in a bankruptcy case when the adverse party has had an opportunity to challenge the propriety of the request).

13

That is exactly what happened with the Wasserstein declarations: it was admitted into evidence, after being subject to cross examination, for the first-day pleadings, *and* the relevant statements at issue here were repeated and relied on in connection with Plan confirmation. *See* Pakrouh Declaration, at Tab 1 at 9:13-23 ("MR. CATALANELLO: . . . We would look to move the declaration into evidence and, of course, open Mr. Wasserstein up to any cross-examination, whenever the Court deems that appropriate. THE COURT: Sure. Any objections to the admission of Mr. Wasserstein's declaration for purposes of the limited relief sought at today's hearing? (No verbal response) THE COURT: Very well. The declaration is admitted. (Wasserstein declaration received into evidence)[.]"); D.I. 407.

The Court faults Movants for failing to provide supporting caselaw on this issue, despite Movants' offer to do so during oral argument. Adv. D.I. 20 at p. 13 n. 68; Motion to Dismiss Tr. at 38:18-39:7; 42:16-19; 50:20-24. Armed with the caselaw above the Court should not have declined to review the Wasserstein Declaration or hold the fact that law was not provided in support of argument when the same was sought. Adv. D.I. 20 at p. 13 n.68 (stating Defendants' "fail[ed] to provide supporting caselaw" on this issue). Because the Wasserstein Declaration and the relevant statements therein became part of the disclosure statement and the Plan confirmation process in the chapter 11 proceeding and, as such, part of the record of the case, they should not have been dismissed and should have been considered by the Court.

## **CONCLUSION**

For the foregoing reasons, Movants respectfully request that the Court (a) grant the Motion; (b) amend the August 25th Order as set forth in the accompanying proposed order amends; and (c) provide such other and further relief as the Court deems just and proper under the circumstances.

Dated: September 8, 2025
Wilmington, Delaware

**MORRIS JAMES LLP**

By: */s/ Tara C. Pakrouh*
Tara C. Pakrouh (DE Bar No. 6192)
3205 Avenue North Blvd., Suite 100
Wilmington, Delaware 19803
Telephone: (302) 888-6800
E-mail: tpakrouh@morrisjames.com

-and-

**MORRISON COHEN LLP**
Heath D. Rosenblat (admitted *pro hac vice*)
Dawn R. Sudama (admitted *pro hac vice*)
909 Third Avenue, 27th Floor
New York, New York 10022
Telephone: (212) 735-8600
E-mail: hrosenblat@morrisoncohen.com
E-mail: dsudama@morrisoncohen.com

*Counsel for 225 Bowery Mezz Lender LLC, Northwind RE LLP, Northwind RE GP LLC, and Ran Eliasaf*